IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**MANUEL GARZA, Jr.,**

    **Plaintiff,**

vs.                                                                                                                           **Civ. No. 06-029 RHS**

**JO ANNE B. BARNHART,**
**Commissioner of Social Security,**

    **Defendant.**

## MEMORANDUM ORDER AND OPINION

    1. THIS MATTER comes before the Court on Plaintiff's Motion to Reverse or Remand Administrative Agency Decision ("Motion"), filed June 30, 2006 **[Doc. 10]**. Plaintiff seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits.

    2. On September 23, 2002 and February 4, 2004, Plaintiff submitted claims for DIB and SSI benefits, respectively, alleging a disability which commenced on January 24, 2002 due to a combination of impairments.[1] (Tr. at 19, 20). Plaintiff was born on March 21, 1966, has obtained a GED, and has worked in landscaping, electronics and plumbing. (Tr. at 64, 100, 105).

    3. On April 26, 2005, the ALJ issued a decision finding that Plaintiff was not entitled to benefits under either of his applications. The ALJ determined that Plaintiff was not disabled from

---

[1] In his application submitted on September 23, 2002, Plaintiff claims that "post dramatic stress disorder [sic]" and "sycsophenia [sic]" limit his ability to work. (Administrative Transcript ("Tr.") at 99). The ALJ found that Plaintiff's alcohol dependency and "mood and anxiety symptoms" constituted severe impairments pursuant to 20 C.F.R. §§ 404.1523 and 416.923. (Tr. at 21).

Plaintiff's alleged onset date to February 2003 "on the basis of performing substantial gainful activity" during that time period. (Tr. at 20). The ALJ further found that since February 2003, Plaintiff has "retain[ed] the capacity to adjust to work that exists in significant numbers in the national economy[,]" and thus, "was not under a disability as defined in the Social Security Act, at any time through the date of this decision." (Tr. at 24 (citations omitted)).

     4. On November 16, 2005, the Appeals Council denied Plaintiff's request for review, (tr. at 5), thus rendering the ALJ's decision the final decision of the Commissioner, see Doyal v. Barnhart, 331 F.3d 758, 759 (10th Cir. 2003). The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence.[2] Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted). Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests. Id. (citation omitted).

     5. "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." Thompson, 987 F.2d at 1486 (citing 42 U.S.C. § 423 (d)(1)(A)); see also 42 U.S.C. § 1382c(a)(3)(A). Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. Id.; see 20 C.F.R. §§ 404.1520(a - f); 416.920. The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled. Id. (citations omitted).

---

     [2]Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Castellano v. Secretary of Health & Human Services, 26 F.3d 1027, 1028 (10th Cir. 1994) (internal quotations and citations omitted). "Evidence is insubstantial if it is overwhelmingly contradicted by other evidence." O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994) (citation omitted).

6. At the first four levels of the evaluation, the claimant must show: (1) that he is not working; (2) that he has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; (3) that the impairment meets or equals one of the listing of impairments in 20 C.F.R. Pt. 404, Subpt.P, App.1; or (4) that he is unable to perform work done in the past. At the fifth step, the Commissioner must produce evidence regarding the claimant's ability to perform other work. Reyes v. Bowen, 845 F.2d 242, 243 (10th Cir. 1988).

7. Plaintiff raises the following allegations of error with respect to the ALJ's decision: (1) the ALJ erred in not assigning controlling weight to Plaintiff's treating psychiatrist; (2) the ALJ's step five findings are not supported by substantial evidence because the hypotheticals presented did not include all of the Plaintiff's limitations; and (3) the ALJ erred in failing to address the lay testimony of two of Plaintiff's former employers. (Memorandum in Support of Motion ("Memo") at 1, filed Jun. 30, 2006 **[Doc. 11]**).

*Treating Psychiatrist Opinion*

8. Plaintiff argues that the ALJ erred in not fully crediting his treating psychiatrist's opinion of December 29, 2004, expressed in a "Medical Source Statement of Ability to Do Work-Related Activities (Mental)," indicating that Plaintiff is markedly limited in interacting with others and responding to changes in a work setting.[3] Memo at 8-9 (citing tr. at 22). Plaintiff contends that the ALJ, in assessing the treating psychiatrist's opinion, "interposed his own speculative lay

---

[3] In his Medical Source Statement of December 29, 2004, Plaintiff's treating psychiatrist, Dr. Richard B. Smith, indicated that Plaintiff was markedly limited in his ability to: (1) interact appropriately with the public, supervisor(s), and co-workers; and (2) respond appropriately to pressures and changes in a usual or routine work setting. (Tr. at 268). As support for this assessment, Dr. Smith explained that "[t]his patient with a mood disorder has a very labile mood; is very irritable and volatile daily." (Id.)

person's opinion over that of [the] treating psychiatrist" in order to discount his findings.  (Memo at 9).

9. An ALJ is required to give controlling weight to a treating physician's well-supported opinion, so long as it is not inconsistent with other substantial evidence.  <u>Castellano v. Secretary of Health and Human Services</u>, 26 F.3d 1027, 1029 (10th Cir. 1994).  "Even if a treating physician's opinion is not entitled to controlling weight, treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [20 C.F.R.] § 404.1527."[4]  <u>Langley v. Barnhart</u>, 373 F.3d 1116, 1119 (10th Cir. 2004) (citations, internal quotation marks and internal brackets omitted).  "If the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so."  <u>Id.</u>

10. In his decision, the ALJ expressly discounted <u>two</u> of Dr. Smith's opinions.  First, the ALJ determined that he could not fully credit Dr. Smith's letter opinion, dated April 5, 2004, that Plaintiff was 100% disabled because "it is inconsistent with [Dr. Smith's] own clinic records."[5]  (Tr. at 22).  The ALJ explained that this opinion is "in direct contrast to [Plaintiff] being almost consistently described as stable, and . . . with [Dr. Smith's] never retracted April 2003 work release."  (Tr. at 22).  After discounting Dr. Smith's opinion that Plaintiff was 100% disabled, the

---

[4]"Those factors are:  (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion."  <u>Langley</u>, 373 F.3d at 1119 (citing <u>Watkins v. Barnhart</u>, 350 F.3d 1297, 1301 (10th Cir. 2003)).

[5]Plaintiff does not challenge the ALJ's refusal to assign controlling weight to Dr. Smith's opinion that Plaintiff is 100% disabled.

4

ALJ noted that Plaintiff "was then incarcerated for about six months." (Tr. at 22).

11. In the next sentence of his decision, the ALJ stated:

> Likewise, I cannot fully credit Dr. Smith's December 2004 submission in which he rates marked difficulties in [Plaintiff's] social functioning and adaptability. Having just been released from jail [Plaintiff] very likely had an irritable and labile mood. However, the longitudinal evidence does not support that he has exhibited limitations of marked severity in this functional domain.

(Tr. at 22). The remainder of the paragraph consists of the ALJ's findings regarding Plaintiff's limitations and mental residual functional capacity ("RFC").[6] The Court finds that the ALJ made several errors in assessing and discounting Dr. Smith's December 2004 opinion.

12. First, the ALJ did not analyze Dr. Smith's December 2004 opinion according to the process described in Langley. Although the ALJ apparently found that Dr. Smith's opinion was not entitled to controlling weight, it is not clear what weight, if any, he afforded Dr. Smith's opinion.[7] See id. 373 F.3d at 1119 (explaining that the ALJ's reasoning must be "*sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight*" (emphasis in original)

---

[6]The ALJ found no limitations in Plaintiff's activities of daily living, moderate limitations in Plaintiff's social functioning and ability to concentrate on detailed or complex tasks, and no extended periods of decompensation. (Tr. at 22). Based on these findings, the ALJ concluded that Plaintiff's mental RFC would allow him to perform "unskilled work activities . . . performed in non-public settings . . . where there is no extensive interaction . . . with coworkers and supervisors." (Tr. at 22).

[7]In finding only "moderate" limitations with respect to Plaintiff's social functioning and ability to understand, remember and carry out instructions associated with detailed or complex tasks [which the ALJ erroneously referred to as "social functioning" (tr. at 22)], the ALJ apparently rejected all of Dr. Smith's findings of "marked" limitations. However, the ALJ did not discuss, nor is it apparent, whether he accepted any of Dr. Smith's "moderate" limitations regarding Plaintiff's abilities to deal with simple instructions and work-related decisions.

5

(citations, internal quotation marks and internal brackets omitted)).  Moreover, while the decision reflects the ALJ's awareness of some of the factors set forth in § 404.1527, it is not clear that the ALJ recognized and used all of these factors in weighing Dr. Smith's opinion.[8]

13.  Second, in finding that Plaintiff's irritable and labile mood likely resulted from his recent release from jail, the ALJ "overstepped his bounds into the province of medicine."  Miller v. Chater, 99 F.3d 972, 977 (10th Cir. 1996).  Nothing in Dr. Smith's opinion indicates that he attributed Plaintiff's mood to his incarceration.  "The ALJ may not substitute his own opinion for that of claimant's doctor."  Miller v. Chater, 99 F.3d 972, 977 (10th Cir. 1996) (citations omitted); see also McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002) (noting that the ALJ may not reject a treating physician's opinion "*due to his or her own credibility judgments, speculation or lay opinion*") (emphasis in original) (citation omitted).  Thus, the ALJ erred to the extent that he discounted Dr. Smith's opinion based on his speculation regarding Plaintiff's mood.

14.  Third, the ALJ erred to the extent that he discounted Dr. Smith's December 2004 opinion as being "inconsistent with his own clinic records."[9]  (Tr. at 22).  Dr. Smith's records indicate that over the course of more than a year, he noted Plaintiff's irritability, anxiety, and/or restlessness at various times.  (E.g., Tr. at 193-95, 209, 211, 258-59).  Moreover, it is not apparent that Dr. Smith's work release of April 2003 or his descriptions of Plaintiff as "stable" are

---

[8]For example, while the ALJ noted that Dr. Smith has "followed [Plaintiff] on an outpatient basis . . . under diagnoses of ethanol dependence and a bi-polar disorder[,]" (tr. at 21), it is not apparent that the ALJ considered whether Dr. Smith was a specialist (tr. at 202 (indicating that Dr. Smith is a Diplomat of the American Board of Psychiatry).

[9]It is not clear that the ALJ discounted Dr. Smith's opinion on this basis.  However, the ALJ's prefatory use of the word "likewise" in conjunction with his reference to "the longitudinal evidence" suggest that he may have done so.  (Tr. at 22).

in "direct contrast" to his opinion of December 2004.  (Tr. at 22).  Because the ALJ erred in assessing the opinion of a treating medical source regarding Plaintiff's limitations, this matter must be remanded for a re-assessment of Dr. Smith's opinion.

### *Lay Witness Statements*

15.  Plaintiff also contends that the ALJ erred in failing to consider two vocational reports submitted by Plaintiff's employers regarding Plaintiff's ability to work.  (Tr. at 168-69).  In a report signed by Rudy Lucero on 12-29-04, Mr. Lucero identified himself as a former employer who sometimes refers "simple but time consuming" jobs to Plaintiff.  (Tr. at 169).  Mr. Lucero stated that Plaintiff "had a hard time controlling his temper and did not relate well with co-workers, customers, or myself, especially if he was questioned about his work or had to make changes to his job assignments."  (Tr. at 169).  Mr. Lucero stated that Plaintiff quit working "because I could not afford to pay the wages he wanted[,]" explaining that he did not fire Plaintiff because "his Journeyman skills were valuable to my business."  (Tr. at 169).  Nevertheless, despite Plaintiff's skills, Mr. Lucero "*would not rehire [Plaintiff]*."  (Tr. at 169 (emphasis added)).

16.  In another report signed by David Cortez on 12/27/04, Mr. Cortez identified himself as an employer who allows Plaintiff to work in his "auto detailing shop from time to time doing very simple tasks that are part of the extensive cleaning jobs we do in the shop . . . ."  (Tr. at 168).  Mr. Cortez stated that while Plaintiff "means well . . . his work is very slow and I often have to remind him . . . what I need him to do on a particular task."  (Tr. at 168).  Mr. Cortez further stated that Plaintiff can be "defensive about any remarks he interprets as criticism . . . . usually stays to himself . . . . [and] is often late to show up at work . . . ."  (Tr. at 168).  Mr.

Cortez concluded that:  *"If [Plaintiff] and I weren't friends, he wouldn't still be working in my shop."*  (Tr. at 168 (emphasis added)).

      17.  The ALJ's determination of a claimant's mental RFC "involves the consideration of evidence, such as . . . [*inter alia*] [r]eports of the individual's activities of daily living and work activity, as well as testimony of third parties about the individual's performance and behavior." Social Security Ruling ("SSR") 85-16.  "Information concerning an individual's performance in any work setting . . . may be pertinent in assessing the individual's ability to function in a competitive work environment."  Id.  As such, the two reports submitted by Plaintiff's employers constitute pertinent evidence regarding Plaintiff's work activity and performance in a work setting.

      18.  While an ALJ need not discuss "every piece of evidence," the record must show that he considered all of the evidence.  See, e.g., Oslin v. Barnhart, 69 Fed.Appx. 942, 947 (10th Cir. 2003).  Moreover, an ALJ "may not ignore evidence that does not support his decision, especially when that evidence is significantly probative."  Id.  "Where the record on appeal is unclear as to whether the ALJ applied the appropriate standard by considering all the evidence before him, the proper remedy is reversal and remand."  Baker v. Bowen, 886 F.2d 289, 291 (10th Cir. 1989) (citation omitted).

      19.  Here, the ALJ did not discuss any of the particulars of the employers' reports.  Indeed, the ALJ did not even mention that any reports were submitted from Plaintiff's employers regarding Plaintiff's work-related abilities.  Thus, "it is not at all clear that the ALJ considered . . . [these pertinent reports] in making his decision."  Id. 466 F.3d at 915 (quoting Adams v. Chater, 93 F.3d 712, 715 (10th Cir. 1996) (internal quotation marks omitted)).  The Commissioner does

not dispute Plaintiff's contention that the ALJ failed to consider or discuss these "third-party statements." (Defendant's Response to Plaintiff's Motion ("Response") at 9). Rather, the Commissioner apparently argues that any error in failing to address these reports was harmless because the reports "support the ALJ's conclusion that Plaintiff was not disabled." (Response at 9).

20. In order to conclude that the ALJ's error is harmless, the Court must make a factual finding that the employers' reports support the ALJ's finding of non-disability. However, "to the extent a harmless-error determination rests on legal or evidentiary matters *not considered by the ALJ*, it risks violating the general rule against post hoc justification of administrative action." Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004) (citing SEC v. Chenery Corp., 318 U.S. 80 (1943) (emphasis added)). Moreover, because this evidence could arguably support a finding of disability, the Court is "not in a position to draw factual conclusions on behalf of the ALJ." Allen, 357 F.3d at 1144 (citation and internal quotation marks omitted).

21. At best, it is unclear whether the ALJ considered the pertinent evidence contained in the vocational reports submitted by Plaintiff's employers. Accordingly, this matter should be remanded for consideration of these reports.

*Step Five Findings / Hypotheticals*

22. Plaintiff contends that the ALJ erred because the hypotheticals presented to the Vocational Expert ("VE") at the administrative hearing failed to include several limitations contained in Dr. Smith's December 2004 opinion. However, because the ALJ's re-assessment of Dr. Smith's opinion and consideration of the lay witness reports may impact the RFC finding, the Court need not address this allegation of error. On remand, the ALJ should modify the

hypotheticals presented to a VE, as necessary, based on the findings following a re-assessment of Dr. Smith's opinion and a consideration of the lay reports submitted by Plaintiff's employers. The Court concludes that the instant matter should be remanded to the Commissioner for further proceedings.

**WHEREFORE,**

**IT IS ORDERED** that Plaintiff's Motion to Reverse or Remand Administrative Agency Decision **[Doc. 10]** is **granted** and this matter is **remanded** to the Commissioner for further proceedings, to include:

A. A re-assessment of the December 29, 2004 medical opinion of Richard B. Smith, M.D., regarding Plaintiff's abilities and limitations;

B. A consideration of the lay vocational reports submitted by Plaintiff's employers in this matter, to include addressing such evidence in the ALJ's decision; and

C. A modification of the hypotheticals presented to a VE, as necessary, based on any new or changed findings following the ALJ's re-assessment of Dr. Smith's opinion and the lay vocational reports.

_Robert Hayes Scott_
ROBERT HAYES SCOTT
UNITED STATES MAGISTRATE JUDGE